[Civ. No. 14589. First Dist., Div. One. Mar. 22, 1951.]

BRUCE JOHNSTONE, Appellant, v. MAY RICHARDSON
et al., Respondents.

Bruce Johnstone, in pro. per., and R. J. Hecht for Appellant.

Edmund G. Brown, Attorney General, and J. Albert Hutchinson, Deputy Attorney General, for Respondents.

PETERS, P. J.—Bruce Johnstone, as a resident of Inverness, Marin County, and as accuser or complainant, for several years has sought, by various proceedings, to compel the State Board of Equalization to revoke the on-sale distilled spirits license for seasonal business issued to May Richardson

who operates the Inverness Lodge. The petitioner first pursued his remedies before the state board, and, when it denied him relief, sought mandate to compel the board to cancel the license. Although the petition for mandate presented several issues involving the validity of the issued license, by stipulation of the parties it was agreed that, in the first instance, the issues were to be restricted in that proceeding to an interpretation of article XX, section 22 of the Constitution, and of section 38f of the Alcoholic Beverage Control Act (Stats. 1935, p. 1123, as amended; 2 Deering's Gen. Laws, Act 3796), and to a determination as to whether those provisions, as applied to the facts, prohibited the issuance of the questioned license, leaving the other issues to be tried later. It was further stipulated that May Richardson was fully qualified for a seasonal on-sale general license except as she might be affected by section 38f. The trial court denied the application for the writ. This court affirmed, holding that section 38f did not apply to seasonal licenses. (*Johnstone* v. *State Board of Equalization,* 95 Cal.App.2d 527 [213 P.2d 429].)

On the same day that the Supreme Court denied a petition for hearing in that case (March 6, 1950) Johnstone filed a request to file a supplement and amendment to his original petition for mandate. The trial court, without a trial, denied the request and denied the petition for the writ insofar as it involved issues not passed on in the first proceeding, and again Johnstone appeals. This piecemeal trying of cases by limiting, by means of a stipulation, the issue to be first tried, and, upon failure to secure the desired relief, trying other issues that could and should have been tried in the first proceeding, is not to be commended. All of the issues involved in this and the prior proceeding should have been tried in one action. However, in the interests of justice we will assume, for the purposes of this appeal, that the holding in the prior opinion is not res judicata of the issues now involved.

The original petition which appellant unsuccessfully sought to amend alleges that appellant is a resident of Inverness, Marin County; that during the school vacation period the population of that town and area is greatly increased by vacationists; that May Richardson operates the Inverness Lodge; that during the entire year food and lodging are furnished at the lodge; that liquor is sold on the premises under license each year for the nine-month period commencing April 1st and terminating December 31st; that the busi-

ness of the lodge is not seasonal within the provisions of the Alcoholic Beverage Control Act; that an on-sale distilled spirits license for a seasonal business can be issued properly only to a business that is carried on at specific seasons or periods of the year, and which, from its very nature, cannot be continuous; that May Richardson cannot qualify in this classification. It is further alleged that since 1947 the board has issued a seasonal license to May Richardson upon her representation that she runs a seasonal business, which representation it is claimed is false and was known by the applicant and the board to be false. It is also averred that on April 1, 1949, appellant filed a protest with the board, protesting the renewal of the license; that the board refused to consider the protest; that on April 20, 1949, appellant filed an accusation or complaint requesting the board to cancel the license on the ground that the business involved was not a seasonal one; that the board replied that there was no requirement in the law that a licensee must actually close his premises during any portion of the year; that the legal requirement of a seasonal business is that the premises be located in a seasonal area, and that for one quarter of the year the licensee shall not sell alcoholic beverages; that Inverness Lodge is in such a seasonal area and does not sell liquor in the first quarter of the year. The petition then alleges that in thus defining a seasonal business the board is attempting to usurp the functions of the Legislature by creating a new type of license, that is, one that is issued to a licensee who does an annual business in a seasonal area; that such a license is not recognized by the law; that the board, in issuing such a license, violated the law. The petition further alleges that the appellant requested the board to serve the complaint on the licensee, but the board advised him that it had been advised by the attorney general that no further action need be taken by the board, and that no hearing would be had. The supplement to the petition avers that the license was issued to May Richardson in the summer of 1947 over the protests of certain residents of Inverness even though a hearing officer of the board had recommended a denial of the license on the ground that the applicant does not conduct a seasonal business; that since 1947 the board has issued a license to May Richardson every three months except for the first three months of the year, and will continue to do so unless restrained. The petition requests a writ of mandate requiring the board to revoke or suspend the license of May

Richardson, and seeks to enjoin the board from issuing to her such a license until her premises qualify under the law. Attached to the petition are some 10 exhibits that support, with documentary evidence, some of the factual allegations of the petition.

The board filed an answer denying some of the allegations of the petition, alleging the prior proceedings and averring, among other things, that the petition does not state a cause of action.

No trial was had. The cause was argued orally and in writing and the trial court then denied the petition. It held that the complaint filed with the board by petitioner on April 19, 1949, did not state a cause of action requiring a hearing to be held, and that the board in declining a hearing did not abuse its discretion. It also held that the license sought to be suspended had expired, and that the cause was therefore moot. Permission to file the amended and supplemental petition was denied, as was the application for the writ. Judgment was entered accordingly.

It should first be pointed out that the appellant does not complain of the fact that no formal hearing in the sense of a trial was had. In fact, appellant specifically requests that the case not be remanded for a trial, but requests that it be decided as a matter of law. His exact position is stated as follows in his reply brief (p. 8) : ''This controversy should be brought to an end. Each side presented its contentions to the trial Court; each side demurred to the other's pleas; petitioner stands on his petition, the Respondent Board, on its theory of 'fluctuating demand' as justification for the issuance of the license in question. . . . No purpose would be served by a remand. We can make no better case than the one made in our petition; there is no evidence which could alter the situation.''

The sole question presented is whether a business that operates during the entire year, but which is subjected to fluctuating demands during the year, is or is not a business that may secure a seasonal liquor license. It is the theory of appellant that, as a matter of law, any business that operates throughout the year, regardless of the fluctuating demand, is not a seasonal business and is not entitled to a seasonal liquor license. This contention cannot be sustained.

There is no statutory definition of the phrase ''seasonal business.'' The Constitution, in article XX, section 22, which is the section generally defining the powers of respondent

board in liquor matters, authorizes the board to issue licenses for less than a year by fixing the amount of the license fee for annual licenses and a smaller fee for "seasonal businesses." The Alcoholic Beverage Control Act (2 Deering's Gen. Laws, Act 3796) while it does not define the terms "seasonal business," does refer to such businesses in several places. Thus, in section 5, subsection 22, in referring to types of licenses and the fees to be charged fixes the license fee for "On-sale general license for seasonal business" at $18.75 per quarter. Section 38f of the act limits on-sale general licenses to one license for each 1,000 of population. It was held, on the former appeal, that this limitation did not apply to licenses for seasonal businesses. The section (38f) also confers upon the board the "power to make all rules and regulations consistent with the provisions of Section 22 of Article XX . . . or this act, necessary to carry into effect the provisions of this section, and to restrict the issuance of alcoholic beverage licenses, including seasonal licenses." Thus, the Constitution and the statute use the terms "seasonal business" and "seasonal license" to mean the same thing.

It is apparent that the term "seasonal" used to limit the word "business" or "license" could mean a business which operates only in certain periods of the year and is entirely dormant in other portions of the year. The then attorney general of the state, in a letter addressed to the board dated November 27, 1936, in discussing the power of the board to fix fees for various types of licenses, so construed the terms "seasonal business." In that letter it is stated: "As to what constitutes a seasonal business I refer you to the case of *Froehly* v. *T. M. Harton Co.*, 291 Pa. 157 [139 A. 727], which contains an excellent discussion upon this point. It was pointed out there that a business, to be seasonal, must be of the kind that is performed exclusively at specific seasons or periods of the year and which, from its nature, cannot be continuous or carried on throughout the year. It was, therefore, held that in that case the occupation of dishwasher was not a seasonal business even though the amusement company for which the dishwasher worked was a seasonal business, being open only during the summer months."

This is the interpretation which appellant contends this court must give to the terms. In additional support of his position he cites *Local Union, etc.* v. *Howard Bus Lines, Inc.*, 202 Ga. 430 [43 S.E.2d 523], which defined the terms "seasonal

industries'' to mean industries that were seasonal by nature, and not those which were seasonal only because of peaks and lulls in consumer demand.

 The attorney general is no longer of the view expressed in his letter of 1936. Under date of June 14, 1949, in an official letter to the board in reference to the facts of the instant case, a deputy attorney general expressed himself as follows: ''A reference to the Act and to the regulations of the Board does not indicate that such license may be issued only where the premises for which the license is to be issued was literally closed and locked during any part of the year. The legislative and administrative history demonstrates that such licenses have been sought and issued for premises in the recreational areas of the State where, during certain periods of the year, vacationists, travelers and other persons resort in considerable numbers, whereas, in 'off-season' periods the attendance may be very small, thus necessitating a completely different type of operation during the season of large attendance and the relatively small attendance at other times. Many establishments in the recreational areas of the State, however, maintain limited services and usually remain open in a limited sense throughout the year in order to prepare for the coming season, and the legislative intent and the Board policy, as indicated by the legislative and administrative history, indicates that such so-called 'seasonal licenses' were designed to accommodate the public under such circumstances, and in the absence of some such showing in the proposed accusation it appears that no good cause for taking disciplinary action is presented on this theory.''

We agree with this construction of the words involved as used in the Alcoholic Beverage Control Act. It must be remembered that words do not always have an immutable meaning. They are not construed in a vacuum. When used in a statute they must be construed in context, keeping in mind the nature and obvious purpose of the statute where they appear. An on-sale liquor license is somewhat different from other types of licenses. It is only granted where the applicant is operating some other business as well—as sale of food, hotel where food is served, etc. In the instant case the applicant runs an establishment where food and lodging are furnished. That business she operates the entire year. Admittedly, because the place of business is located in a vacation area, the business of the lodge varies in different seasons. The business is seasonal in the sense that during certain periods

there is a great demand for the services rendered, while in other periods there is very little demand. The proprietor, nevertheless, has determined to operate the hotel business for the entire year. But, so far as her liquor business is concerned, she operates that but nine months a year. That portion of her business is discontinued for three months of each year. Of course, the two businesses cannot and should not be considered separately because the liquor business is integrally connected in this case with the hotel business. But, because the lodge here involved is located in a vacation area, it is very busy during certain periods and not busy in other periods. This requires a different type of operation during the two periods. On-sale licenses for seasonal businesses were obviously designed by the Legislature and by the board to take care of the needs of the public in such areas. It would not serve the needs of the public if it were to be held that a summer resort could secure a seasonal license if it closed its doors for some period of the year, but could not secure such a license if it remained open all year to serve its permanent guests, to prepare for the coming busy season, to keep its help on a permanent basis, and for other reasons. Such an interpretation would be most artificial. (See *Hotel Enterprises* v. *Porter*, 157 F.2d 690.) We think that, as used by the Legislature and by the board, the word ''seasonal'' must be interpreted to refer to a business located in a seasonal area where the consumer demand fluctuates during different periods of the year. This is in accord with the dictionary definition of the term. In Webster's New International Dictionary (2d ed.) the first definition given of the term ''seasonal'' is ''of, pertaining to, or occurring at, a particular season or seasons; as *seasonal* rates, demand,'' etc. The secondary definition, which is the one contended for by appellant, is ''not continuously active.'' We think that the word was used in the statute in the first sense above set forth.

The trial court, in addition to interpreting the words involved as above indicated, held that the entire proceeding was moot. This conclusion was based upon the fact that the specific license sought to be revoked terminated on December 31, 1949, and the judgment of the lower court was entered on March 20, 1950, which was during the three-month period the applicant had no license. Therefore, there was not, on the date judgment was entered, any license upon which the board could act. However, it is admitted that the applicant

intended to and did apply and secure a seasonal license starting April 1, 1950, in accordance with her past custom.

█ It would be unsound to hold that in all cases an administrative proceeding involving the revocation of a license issued for fixed periods could not be reviewed because the statutory period fixed for the license had expired. Short term administrative orders could seldom be reviewed if that were the law, and the judicial power of review would be defeated in such cases. (See *Burke* v. *Coleman,* 356 Mo. 594 [202 S.W.2d 809]; *Wahl* v. *Waters,* 11 Cal.2d 81 [77 P.2d 1072].) For these reasons we do not predicate our decision upon the ground that the proceeding was moot.

The petition for the writ of mandate admitted that the business of Inverness Lodge fluctuates in the different seasons of the year. The petition also disclosed that the liquor license is issued for nine months of the year. It also disclosed that the sole ground upon which the accusation before the board was based was that Inverness Lodge remains open the entire year, and that such a business is not entitled to an on-sale distilled spirits license for a seasonal business. Appellant requests that the case be decided as a matter of law. The board and the trial court interpreted the statute to mean that seasonal licenses could be issued to businesses such as that of applicant even though it operated on an annual basis. That interpretation is sound. That is the end of the case.

The judgment appealed from is affirmed.

Bray, J., and Wood (Fred B.), J., concurred.